IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE SHAW | ) | |
|     Plaintiff, | ) | No. 13-cv-9335 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| SALEH OBAISI, WEXFORD HEALTH SOURCES, INC., MICHAEL LEMKE, ROYCE BROWN-REED, ARTHUR FUNK, LOUIS SHICKER, SHAUN BASS, and MARCUS HARDY | ) ) ) ) ) | |
| | ) | |
|     Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Maurice Shaw is currently incarcerated at Stateville Correctional Center ("Stateville"). He filed his Amended Complaint on April 8, 2014, alleging defendants have been, and are currently, deliberately indifferent to his serious medical need related to a shoulder injury. Defendants Wexford Health Sources, Inc. ("Wexford"), Saleh Obaisi, M.D., and Arthur Funk, M.D. move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) arguing that: (1) defendant Obaisi was not working at Stateville at the time of the Plaintiff's allegations and further that it is improper to sue him in his official capacity since his employer Wexford is also a party; (2) Shaw has not alleged sufficient facts in his Amended Complaint to state a deliberate indifference cause of action against defendants Funk, Wexford, and Obaisi; and (3) that Shaw has failed to exhaust administrative remedies and is therefore precluded from pursuing his lawsuit. Defendants Michael Lemke, Royce Brown-Reed, Louis Shicker, Shaun Bass, and Marcus Hardy have adopted and joined the portions of the motion to dismiss that relate to the deliberate indifference and exhaustion of administrative remedies claims. For the reasons that follow, defendants' motion to dismiss is denied as to all individual-capacity claims and Wexford, but granted as to the official capacity claim against defendant Obaisi.

1

**BACKGROUND**

Shaw alleges in his Amended Complaint that after injuring his right shoulder in October 2010, he sought but did not receive medical treatment in 2010 or 2011. When the pain increased in early 2012, Shaw saw Dr. Imhotep Carter, the former Stateville Medical Director, on February 6, 2012, and was diagnosed with reduced strength in his right shoulder and a probable torn rotator cuff. Dr. Carter wrote an order for Shaw to receive an MRI and orthopedic treatment at the University of Illinois at Chicago ("UIC") and also prescribed Naproxen. Four months later, on June 11, 2012, Shaw received an MRI from Dr. Asheesh Gupta at UIC confirming his torn rotator cuff. He still had not received medication for his injury. After the MRI, Dr. Gupta prescribed physical therapy 2-3 times per week for four months and a follow-up appointment. Dkt. 9-6. The record shows the treatment plan recommended by Doctors Carter and Gupta.

Shaw filed his first medical grievance about one month after seeing Dr. Gupta, on July 3, 2012, because he had yet to receive the prescribed medication or physical therapy for his shoulder injury. On September 12, 2012, defendant Bass (grievance officer) denied the grievance, reporting that there were no medical orders for physical therapy in the file. Shaw appealed this denial to the Administrative Review Board ("ARB") on July 9, 2013. The ARB denied the appeal on August 8, 2013, because Shaw's appeal was not submitted within the timeframe "outlined in Department Rule 504" and because Shaw "waited" nine months "to follow up on a grievance from September 2012." Dkt 9-10.

On March 25, 2013, Shaw filed an emergency grievance requesting immediate medical treatment and financial compensation for the medical staff's failure to provide him with treatment. Dkt. 9-11. The ARB subsequently denied this grievance on May 19, 2013, again finding the grievance was untimely and directing Shaw to address current medical issues with healthcare staff. Dkt 9-11.

2

Despite the denial, Shaw saw a physician's assistant ("PA") on March 26, 2013, the day after he filed his emergency grievance. The PA noted Shaw's shoulder pain, reduced strength, and torn rotator cuff. The PA also submitted documentation for Shaw to undergo physical therapy "ASAP," ordered a prescription of Naproxen, and scheduled an appointment for Shaw to see defendant Obaisi. Dkt 9, ¶ 48. On April 16, 2013, Defendant Dr. Obaisi saw Shaw but did not dispense any medication or new orders for physical therapy. Shaw also alleges that defendant Obaisi told him to "quit whining and complaining" about not receiving treatment and medication. Dkt 9, ¶ 49.

After this visit, Shaw submitted a series of letters to defendants Shicker, Funk, and Brown-Reed outlining his injury and unfulfilled prescription for physical therapy and requesting they intervene to get him the prescribed medical treatment. Dkts 9-14, 9-15, and 9-16. He then filed a third grievance on June 12, 2013, seeking treatment, medication, and a permit allowing him to be placed in handcuffs that lock in the front of his body rather than behind his back ("front handcuff permit"). On September 7, 2013, Shaw sent a letter to the ARB stating that the grievance officer failed to respond to his June 12, 2013 grievance within the required 60 day time frame, which rendered administrative remedies "unavailable" to him, and caused him to "appeal" the grievance in order to have his grievance addressed on the merits. Dkt 9-13. The ARB issued a written response to this appeal on October 28, 2013, which told Shaw that he would "need to wait for the Grievance Office to respond." Dkt 9-13.

Shaw then filed a fourth grievance on a July 19, 2013, again requesting physical therapy and another grievance on August 1, 2013, requesting physical therapy, a front handcuff permit, and medication stronger than Naproxen.

Shaw began receiving physical therapy on August 15, 2013, fourteen months after it was prescribed by the UIC orthopedist. He received physical therapy for the next several months, except during periods of lock down. In January 2014, Shaw again saw the orthopedic specialist at UIC, who

3

prescribed an additional six to eight weeks of physical therapy followed by an MRI. Shaw alleges that as of April 8, 2014, when he filed his Amended Complaint, he had not received that MRI or any additional physical therapy. In his supplemental affidavit in response to the motion to dismiss, Shaw alleges that he has submitted additional grievances dated February 13, 2014, March 10, 2014, April 9, 2014, May 14, 2014, and June 2014 that have not been answered.

**LEGAL STANDARD**

To withstand a Rule 12(b)(6) motion to dismiss, the allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Smith v. Medical Benefit Administrators, Inc.*, 639 F.3d 277, 281 (7th Cir. 2011). Rule 8 does not require detailed, particularized factual allegations. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations, however, must be enough to raise a plausible right to relief that is more than mere speculation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n. 14 (2007). When considering a motion to dismiss, a court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the non-moving party. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *Pisciotta v. Old. Nat. Bancorp*, 488 F.3d 629, 633 (7th Cir. 2007).

**DISCUSSION**

*Exhaustion of Administrative Remedies*

Defendants move to dismiss Shaw's Amended Complaint contending that Shaw failed to exhaust administrative remedies before filing his complaint in with the Court. Whether Shaw exhausted his administrative remedies is a threshold issue that the Court must resolve before reaching the merits of defendants' motion to dismiss. The Prison Litigation Reform Act provides that Shaw may not bring an action regarding prison conditions before he exhausts "such administrative remedies as are available[.]" *See* 42 U.S.C. § 1997e(a). If a prisoner fails to comply with the prison's grievance process, then "the prison administrative authority can refuse to hear the case,

and the prisoner's claim can be indefinitely unexhausted." *Id.*; *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). To properly comply with the grievance process, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Jones v. Beck*, 549 U.S. 199, 218 (2007). Exhaustion is an affirmative defense that defendants must prove. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The Seventh Circuit has held that not responding to an inmate's grievance (*Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)), or engaging in affirmative misconduct (*Dole*, 438 F.3d at 809) will make the administrative grievance process unavailable to an inmate. If the inmate did all that he could and followed the prescribed steps, then the available remedies were exhausted. *See Dole*, 438 F.3d at 811.

Viewing the evidence in the light most favorable to Shaw, Shaw sufficiently pleaded facts to show he has exhausted the administrative remedies that were available to him. He filed grievances alleging the Stateville medical personnel failed to provide him with the physical therapy, medication, and follow-up examinations prescribed to him. While defendants argue that Shaw failed to obtain administrative decisions on the merits for each of his grievances, Shaw also pleaded sufficient facts to show that his numerous efforts to utilize the administrative process were futile. Excluding the affidavits attached to defendants' motion to dismiss because they present matters outside the pleadings (*See* Fed. R. Civ. P. 12(d)), the Court finds that defendants have not met their burden of proof on their affirmative defense of exhaustion. If defendants wish to pursue this defense, then they must conduct discovery and file the necessary motions, but separately from the filing of a motion for summary judgment. *See e.g., Wagoner v. Lemmon*, No. 13-3839, 2015 WL 449967, *4 (7th Cir. Feb. 4, 2015).

*Deliberate Indifference*

To succeed on a claim of deliberate indifference, a plaintiff must show that (1) his medical condition was subjectively serious and (2) that prison officials were deliberately indifferent to his medical needs, which is an objective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff only has to allege that a prison official, acting with a culpable state of mind, knew of a significant risk to the inmate's health and disregarded that risk. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Shaw has a well-documented injury to his right shoulder that has been diagnosed as a torn rotator cuff. Shaw further alleges that he has lost strength, range of motion, and is unable to properly care for himself due to the injury and the lack of prescribed treatment. Therefore, he has sufficiently pleaded a subjectively serious medical condition.

Shaw brings a claim against defendant Obaisi in his individual and official capacities. He alleges that defendant Obaisi "deliberately delayed and/or fully denied the prescribed medical care necessary to treat Shaw's torn rotator cuff[.]" Dkt 9, ¶ 66. He also alleges that Obaisi individually reviewed Shaw's medical records on various occasions and even signed off on the referral report containing the orthopedic specialist's diagnosis and treatment plan. *Id.* at ¶ 71. Obaisi repeatedly failed to provide Shaw with his "prescribed medication, physical therapy, and follow-up consultation for over fourteen months." *Id.* at ¶74. Shaw has pleaded sufficient facts to state a cause of action against defendant Obaisi based on individual liability for deliberate indifference to a serious medical need and defendants' motion to dismiss the individual claims against defendant Obaisi is denied.

Shaw, however, does not meet his pleading burden in his official capacity claim against defendant Obaisi. According to the Amended Complaint, Obaisi had "final policy making authority with regard to Shaw's medical treatment and care." Shaw fails to cite any specific instances in which

Obaisi's "final policy making authority" amounts to deliberate indifference. The official capacity claim against defendant Obaisi is therefore dismissed.

Shaw claims that Wexford maintained a "uniform practice and policy of cutting or avoiding costs at the expense and reckless disregard of inmate medical care" and that it has a policy of inadequately staffing medical personnel at Stateville which results in prisoners not receiving the medical treatment they require. Dkt 9, ¶ 84. He also alleges that Wexford fails to employ "personnel competent to treat patients' serious medical needs." *Id.* Wexford's policies included "refusing or delaying medical treatment and/or collegial review prescribed by offsite medical professionals such as doctors at UIC; delaying or refusing to provide prescribed pain medication to lower costs [.]" *Id.* Shaw has pleaded sufficient facts to state a claim of deliberate indifference against Wexford.

On June 16, 2013, Shaw sent letters regarding his shoulder injuries and the UIC orthopedist's prescription of pain medication, physical therapy and follow-up consultations to defendants Shicker, Funk, and Brown-Reed. None of these defendants responded. Additionally, Shaw alleges defendant Bass was deliberately indifferent to his serious medical condition when Bass denied Shaw's July 3, 2012 grievance by determining that his medical file did not contain any doctor's orders prescribing physical therapy when it did. Shaw further alleges that defendant Hardy was deliberately indifferent when he reviewed and concurred with defendant Bass' improper denial of Shaw's July 3, 2012 grievance. Finally, Shaw alleges that defendant Lemke, as Warden of Stateville, received his emergency grievance referencing his ongoing serious medical condition and prior grievance, yet Shaw deliberately disregarded and/or denied his grievances. He also alleges that Lemke approved, condoned, and allowed the Wexford medical staff to deny him adequate medical care. Not only has Shaw pled sufficient facts to state claims of deliberate indifference against defendants Shicker, Funk, Brown-Reed, Bass, Hardy, and Lemke, but he also attached evidence

7

supporting these claims. Therefore, defendants' motion to dismiss Shaw's claims against these defendants is denied.

**CONCLUSION**

Defendants' motion to dismiss the official capacity claim against defendant Obaisi is granted. The motion is denied as to the remaining claims.

IT IS SO ORDERED.

_____
Date: February 12, 2015

_____
Sharon Johnson Coleman
United States District Judge