UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Maurice Shaw, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-09335 |
| | ) | |
| Wexford Health Sources, Inc., et al., | ) | Judge Sharon Johnson Coleman |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Maurice Shaw ("Shaw") filed his amended complaint [9] asserting claims against Wexford Health Sources, Inc. ("Wexford"), Dr. Saleh Obaisi ("Dr. Obaisi"), Shaun Bass ("Bass") and Royce Brown-Reed ("Brown-Reed") under 42 U.S.C. § 1983 for their alleged deliberate indifference to Shaw's medical condition. Wexford and Dr. Obaisi (together, the "Wexford Defendants") and Bass and Brown-Reed (together, the "IDOC Defendants") have filed parallel motions for summary judgment. For the following reasons, the Wexford Defendants' motion for summary judgment [111] is granted and the IDOC Defendants' motion for summary judgment [115] is granted.

**Background**

Shaw is currently an inmate in the custody of the Illinois Department of Corrections ("IDOC") at Stateville Correctional Center ("Stateville"). (Dkt. 120[1] ¶ 1; Dkt. 122[2] ¶ 1). Wexford, a private corporation contracted by IDOC, provided medical services to Stateville inmates during the

---

[1] Dkt. 120 is Shaw's response to the Wexford Defendants' statement of material facts. Shaw objected to the Wexford Defendants' statement of facts on the grounds that it violated Local Rule 56.1 because it contained legal arguments and exceeded the number of permitted statements of fact. The Court disregarded any and all legal arguments in the Wexford Defendants' statement of material facts. The Court also finds that the Wexford Defendants did not exceed the number of permitted statements of fact as a majority of the statements were short paragraphs, each of which related to one factual assertion.
[2] Dkt. 122 is Shaw's response to the IDOC Defendants' statement of material facts.

time periods relevant to this dispute. (Dkt. 120 ¶ 3). Dr. Obaisi, who was employed by Wexford, has been the Stateville medical director since August 2, 2012. (Dkt. 120 ¶¶ 2, 26). Bass, who served as a Stateville grievance officer in 2012 and 2013, reviewed prisoner grievances including those concerning medical treatment. (Dkt. 122 ¶ 3). Brown-Reed served as the Stateville Health Care Unit administrator. (Dkt. 122 ¶ 4).

Shaw brings claims against these defendants pursuant to 42 U.S.C. § 1983 for their purported involvement in a 14-month delay in him receiving physical therapy to treat his right shoulder.

In October 2010, Shaw injured both of his shoulders. (Dkt. 122 ¶ 10). Shaw's left shoulder was treated first since both shoulders could not be treated at the same time. Shaw sought treatment of his right shoulder in February 2012, and was referred to the University of Illinois Chicago ("UIC") for an assessment. (Dkt. 122 ¶¶ 11, 12). An MRI was taken of Shaw's right shoulder in May 2012. Shaw returned to the UIC orthopedic clinic on June 11, 2012 for a follow-up on the MRI. (Dkt. 120 ¶ 16; Dkt. 122 ¶ 12). The UIC orthopedic note issued after the visit states that "the MRI of [Shaw's] right shoulder reveals tendinopathy of the supra and infraspinatus with undersurface tear of the distal fibers." (Dkt. 120 ¶ 12; Dkt. 128[3] ¶ 6). The attending physician, Dr. Benjamin Goldberg ("Dr. Goldberg"), recommended that Shaw undergo physical therapy two to three times a week for four months and that he return for a follow-up four months later. (Dkt. 120 ¶ 16; Dkt. 122 ¶ 13). Dr. Roderick Matticks ("Dr. Matticks"), a Wexford staff physician, approved the UIC recommendation for physical therapy on June 14, 2012, and forwarded the recommendation to the Stateville Medical Records Department with instructions to forward it to the Stateville Physical Therapy Department. (Dkt. 120 ¶ 24).

---

[3] Dkt. 128 is the IDOC Defendants' responses to Shaw's statement of additional facts.

2

On July 3, 2012, Shaw filed grievance number M1386. (Dkt. 122 ¶ 14). In the grievance, Shaw briefly describes his visits to UIC in May and June 2012, claims that he was told by a UIC doctor that the MRI revealed a tear in his right rotator cuff, and that he was prescribed physical therapy twice a week. (Dkt. 9-7). Shaw also indicated that he had yet to begin physical therapy. (*Id.*). Bass reviewed the grievance and issued a Grievance Officer Report on September 12, 2012 denying Shaw's grievance. (Dkt. 122 ¶ 15; Dkt. 128 ¶ 12). The Grievance Officer Report provided the following:

> Per chart review and medical records, on 5/4/12 LPN note; return from UIC following MRI for possible rot cuff tear. 5/16/12 MD note; patient visit follow up right shoulder condition. Had MRI done about 2 weeks ago. 6/11/12 RN note; inmate to HCU from UIC ortho follow up. 0 new orders at this time. This Grievance Officer has no medical expertise or authority to contradict the doctor's recommendation/diagnosis. It appears that inmates medical needs have been addressed and met. There are no orders in medical file that specify that grievant is to be submitted for physical therapy.

(Dkt. 9-8). Shaw did not communicate or interact with Bass before or after he filed grievance number M1386. (Dkt. 122 ¶ 21).

Dr. Obaisi met with Shaw for the first time on September 24, 2012. (Dkt. 120 ¶ 26). Dr. Obaisi's notes from the visit indicate that the MRI did not show a full tear. (Dkt. 120 ¶ 27). Dr. Obaisi diagnosed Shaw as having tendinosis and appears to have given him a steroid injection meant to reduce inflammation and pain in his right shoulder. (Dkt. 120 ¶¶ 27, 28). He testified that he was not aware of the physical therapy recommendation from UIC. (Dkt. 120 ¶ 29). Dr. Obaisi did not order physical therapy on September 24, 2012.

Shaw filed his next grievance on March 25, 2013, because he had yet to receive physical therapy; the grievance mentioned that Shaw was still suffering from pain in his right shoulder. (Dkt. 128 ¶¶ 13, 14). On March 26, 2013, Shaw met with LaTanya Williams ("Williams"), a Stateville physician's assistant, and provided her with copies of his MRI, the UIC MRI report, and the UIC orthopedic report. (Dkt. 122 ¶ 31). Williams testified that she could not remember whether the

3

MRI results and the referral for physical therapy were already in Shaw's medical file on March 26, 2013. (Dkt. 128 ¶ 18). Williams ordered physical therapy for Shaw and recommended that it be done "ASAP." (Dkt. 122 ¶ 35; Dkt. 128 ¶ 23).

Shaw next visited with Dr. Obaisi on April 16, 2013. (Dkt. 120 ¶ 36). On that day, Dr. Obaisi charted a plan for physical therapy and authored a written referral to the Stateville Physical Therapy Department. He also referred Shaw back to the UIC orthopedics department for a follow-up visit. (Dkt. 120 ¶¶ 36, 37).

In June 2013, Shaw wrote a letter to Brown-Reed in which he complained of the pain in his shoulder and about not receiving physical therapy. (Dkt. 122 ¶ 22; Dkt. 128 ¶ 26). Shaw never communicated directly with Brown-Reed about his shoulder issues after the June 2013 letter. (Dkt. 122 ¶ 29).

Shaw met with Dr. Obaisi again on August 6, 2013. Dr. Obaisi gave Shaw a steroid injection to deal with inflammation, prescribed two different medications to address inflammation and pain, and ordered an x-ray on Shaw's right shoulder. (Dkt. 120 ¶ 38). Shaw began physical therapy on August 15, 2013. (Dkt. 120 ¶ 39).

**Legal Standard**

Summary judgment is proper where the record shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661 (7th Cir. 2016). A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Whiting*, 839 F.3d at 661.

**Discussion**

To succeed on a claim for deliberate indifference, Shaw must demonstrate that he had an objectively serious medical need and that the Wexford Defendants and IDOC Defendants were

4

aware of and refused to take reasonable steps to address it. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). Generally speaking, "[d]eliberate indifference is intentional or reckless conduct, not mere negligence." *Berry*, 604 F.3d at 440 (citation omitted). As to medical professionals, deliberate indifference will only be inferred if a physician's treatment decision is such a departure from accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Norfleet v.* Webster, 439 F.3d 392, 396 (7th Cir. 2006). When determining whether deliberate indifference can be inferred from a physician's treatment decision, courts focus on what the physician knew at the time of treatment. *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). Nonmedical personnel, on the other hand, are generally entitled to rely on the judgment of jail health professionals, *Berry*, 604 F.3d at 440, and will not be found to be deliberately indifferent unless they have reason to believe that medical personnel are mistreating or not treating a prisoner. *King v. Kramer*, 680 F.3d 1013, 1018-19 (7th Cir. 2010); *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008).

A "serious" medical need is one that a physician has diagnosed as needing treatment or is so obvious that even a lay person would recognize the necessity for a doctor's attention. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (finding that a repeated shoulder injury constituted a serious medical need). The evidence clearly demonstrates that Shaw's medical need was similar to the one addressed in *Knight* and that multiple physicians determined that his shoulder condition required treatment. Shaw's medical need was indeed a serious one. Therefore, the only issue to resolve on the motions for summary judgment is whether Dr. Obaisi, Wexford, Bass, and Brown-Reed were deliberately indifferent.

Shaw claims that Dr. Obaisi showed deliberate indifference to his medical needs by refusing to provide him with and delaying the administration of the recommended treatment for his shoulder

5

injuries – specifically, physical therapy – and by failing to follow up with him. Shaw focuses on the 14-month delay in physical therapy from June 2012 to August 2013.

Shaw argues that Dr. Obaisi is not entitled to summary judgment because there are still outstanding issues of material fact related to whether Dr. Obaisi departed from accepted professional standards. As support for this contention, Shaw relies on Dr. Mitchell B. Sheinkop's ("Dr. Sheinkop") expert report. (Dkt. 112-7). An expert report will not create a genuine issue of material fact if it does not provide the basis for its conclusions. *Weigel v. Target Stores*, 122 F.3d 461, 469 (7th Cir. 1997); *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989) (citations omitted).

The evidence shows that Dr. Goldberg's initial review of Shaw's MRI revealed "tendinopathy of the supra and infraspinatus with undersurface tear of the distal fibers," (Dkt. 120 ¶ 12; Dkt. 128 ¶ 6), while Dr. Obaisi's initial diagnosis was tendinosis. (Dkt. 120 ¶¶ 27, 28). First, Dr. Sheinkop's report and Shaw fail to show how Dr. Obaisi's diagnosis was a departure from accepted medical professional standards. Next, Dr. Sheinkop concludes that the appropriate standard of treatment for rotator cuff related symptoms is physical therapy, (Dkt. 112-7 at 1); the bases for this conclusion are articles that Dr. Sheinkop attaches to his report which directly contradict his conclusion. (*Id.* at 48 ("Many rotator cuff tears can be treated nonsurgically. Anti-inflammatory medication, steroid injections, and physical therapy may all be of benefit in treating symptoms of a cuff tear."); *see also id.* at 53 (listing steroid injections as an alternative to rest, medications, and physical therapy)). Dr. Sheinkop fails to show how Dr. Obaisi's initial treatment of Shaw's shoulder – a steroid injection – is a departure from accepted medical standards, even if one were to assume that he misdiagnosed Shaw or that he was aware of the UIC physical therapy recommendation. Lastly, Dr. Sheinkop writes that "Dr. Obaisi's view of physical therapy is not consistent with Evidence Based Medicine," (*Id.* at 6), but does not indicate how or why. Any

6

conclusions found in Dr. Sheinkop's report that would preclude summary judgment are unsupported and therefore do not create an issue of material fact.

The Wexford Defendants also contend that summary judgment in favor of Dr. Obaisi is appropriate because any delay in physical therapy is not attributable to Dr. Obaisi. Liability under section 1983 requires personal participation by the defendant, *Payne v. Chuchich*, 161 F.3d 1030, 1039 (7th Cir. 1998), and there is no evidence in the record that Dr. Obaisi personally delayed the physical therapy that Dr. Goldberg recommended and Dr. Matticks approved.

No reasonable jury could find that Dr. Obaisi was deliberately indifferent to Shaw's medical need, therefore, the Court grants summary judgment in his favor.

The parties characterize the claim against Wexford, the entity, as a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978), in their joint status report on discovery. (Dkt. 65). The parties agreed to bifurcate Shaw's claims against the individual defendants and his claim against Wexford, the private entity, and the parties agreed to stay discovery related to the claim against Wexford. Shaw, however, reserved the right to move forward with discovery against Wexford if there was no constitutional violation perpetrated by the individual defendants. (Dkt. 65 at 3).

Despite neither party having put forth any facts about Wexford policies and procedures, the Wexford Defendants still argue that summary judgment in favor of Wexford is appropriate because Wexford's agent – Dr. Obaisi – did not provide unconstitutional medical care. *See, e.g. Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014) (holding that Wexford could not be liable for damages because there was no underlying constitutional violation) (citation omitted); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013) (per curiam) (finding that it was unnecessary to decide what Wexford's policy may be since the plaintiff had not established a constitutional violation). Shaw does not attempt to distinguish these cases, or the other cases the Wexford Defendants cite. Rather,

7

Shaw relies on *Woodward v. Correctional Med. Servs. of Ill.*, 368 F. 3d 917, 928 (7th Cir. 2004), for the proposition that Wexford may still be liable for deliberate indifference. Shaw, unlike the plaintiff in *Woodward*, has not shown a series of bad decisions made by the medical staff at Stateville that would permit an inference that the policymakers at Wexford condoned and supported the misconduct of its employees. *Id.* at 927. Rather, the evidence and testimony provided by the parties shows that Shaw received constitutionally adequate medical care, was not ignored by staff, and that delays in receiving treatment were attributable to the normal Stateville processes. No reasonable jury could return a verdict against Wexford for deliberate indifference, particularly when there is no individual liability, therefore, the Court grants summary judgment in Wexford's favor.

Shaw's claim against Bass is primarily based on the Grievance Officer Report. Shaw argues that Bass's representation that there were no new orders for physical therapy in his medical file is evidence that Bass failed to conduct any investigation into Shaw's grievance. Shaw also contends that Bass deliberately disregarded Shaw's complaints when he denied grievance number M1386.

It is clear that grievance number M1386, filed on July 3, 2012, put Bass on notice than an MRI of Shaw's right shoulder had been taken and that Shaw had not received the recommended physical therapy. Shaw, however, fails to provide evidence that elevates Bass's failure to see or review the MRI documentation that UIC provided, assuming it was in the file, to something more than negligence. Bass conducted some investigation; this conclusion is evidenced by his near verbatim quotes from the medical files in the Grievance Officer Report. As an example, the Grievance Officer Report clearly reflects a note from a Stateville nurse which provides that as of June 11, 2012, there were "0 new orders at this time." (*Compare* Dkt. 114[4] at IDOC 000231 *with* Dkt. 9-8).

---

[4] Dkt. 114, a collection of Shaw's medical records, is currently filed under seal.

The contention that Bass deliberately disregarded Shaw's complaints also fails. Shaw provides no authority or evidence that contravenes the longstanding principle that non-medical personnel are entitled to rely on the notes and recommendations of medical professionals. The Grievance Officer Report clearly indicates that Bass relied on the Stateville medical professionals' notes in Shaw's medical files when he came to his decision to deny Shaw's grievance. Finally, the Court notes that Shaw's contact with Bass is limited to grievance number M1386. No jury could find Bass to have been deliberately indifferent to Shaw's medical needs, therefore, the Court grants summary judgment in Bass's favor.

Finally, Shaw alleges that Brown-Reed denied him access to recommended medical care by refusing to take corrective measures and by turning a blind eye to Bass and the Wexford Defendants' actions. The basis for this claim is Shaw's June 2013 letter to Brown-Reed.

The evidence shows that by the time Brown-Reed received the letter, Shaw had already been referred to UIC for another follow-up and that Dr. Obaisi had issued another order for physical therapy. Shaw does not point to any authority that supports the proposition that Bass-Reed had the obligation to speed up Shaw's physical therapy, or that she was not entitled to rely on the decisions that had been made by medical professionals. The Court holds that no jury could find that Brown-Reed was deliberately indifferent to Shaw's medical needs, therefore, summary judgment in Brown-Reed's favor is granted.

**Conclusion**

For the foregoing reasons, the Court grants the Wexford Defendants' motion for summary judgment [111] and the IDOC Defendants' motion for summary judgment [115].

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: January 13, 2017